IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FAVIO RODRÍGUEZ-SÁNCHEZ,

Plaintiff

v.                                                                     CIVIL 08-2238 (JA)

ANÍBAL ACEVEDO-VILÁ, MIGUEL PEREIRA-CASTILLO, JOSÉ A. ORTIZ-ROQUE, LUIS FORTUÑO-BURSET,

Defendants

OPINION AND ORDER

On October 28, 2008, plaintiff pro se Favio Rodríguez-Sánchez, an inmate at Correctional Institution Annex 296, Guayama, Puerto Rico, filed a civil rights complaint against the former governor of Puerto Rico, Aníbal Acevedo-Vilá, Miguel Pereira-Castillo, then head of Corrections for the Commonwealth of Puerto Rico, and Superintendent José A. Ortiz-Roque, warden of the Guayama prison. Summonses were returned executed on all three on January 26, February 3, and March 1, 2010. (Docket Nos. 24, 25, 27.) Answers were required by February 16, February 24, and March 22, 2010 respectively. On February 18, 2010, former governor Aníbal Acevedo-Vilá moved to quash service of process. The other two defendants failed to answer or otherwise plead. The motion to quash was granted on May 17, 2010. Rodríguez-Sánchez v. Acevedo-Vilá, 269 F.R.D. 116 (D.P.R. 2010). On June 30, 2010, I appointed the Federal Public Defender to represent

CIVIL 08-2238 (JA)                                   2

plaintiff.  (Docket No. 34.)  Plaintiff then requested entry of default on July 28, 2010.  (Docket No. 37.)   Default was entered by the Clerk on October 20, 2010. (Docket No. 43.)  A default hearing was held before me on February 8, 2011. (Docket Nos. 64 & 66.)  Plaintiff appeared represented by Assistant Federal Public Defenders  Héctor L. Ramos-Vega and Thomas Trebilcock-Horan.  The defaulted defendants failed to appear or be represented.

   Plaintiff Favio Rodríguez-Sánchez testified that he lives in the West Detention Center (Mayagüez) in medium security, has been imprisoned for five years and is eligible for release in August 2011.  Previously he has been in several prisons including a prison known as Guayama Annex 296, a maximum security institution.  He explained that maximum security entails being locked in a cell for 23 hours daily with one hour granted for recreation, this outside the cell.  Prior to arriving in Guayama Annex 296, he had been in two correctional institutions, the first one being in Aguadilla, Puerto Rico.  He arrived in Guayama Annex 296 due to a mass transfer from a Ponce correctional institution on September 25, 2007. Because it is a maximum security facility, he noted that there should have been one person per cell but there were two  persons, including himself.  The cell number was 205, located in Building 5A.  His cell mate was Josue Torres.  Torres had lived in that cell for about three months prior to plaintiff's arrival.

CIVIL 08-2238 (JA)                              3

Plaintiff lived in cell 205 from September 25 to October 31, 2007.  The cell was designed for a person with disabilities.  There was no adequate place to sit. The toilet was clogged, ruined, and useless.  It never worked.  Cell 205 was next to the showers, and runoff water channeled through the cell.  Foul odors came from the fluid running  through his cell.  The electric lights were put on during the routine counts and normally, he could not put the light on, so the cell mates were in darkness day and night for the most part.  Rodents could come in because there was nothing to obstruct their entering the cell.  The windows were made of steel rods through which mice, roaches and mosquitos entered.  There were no screens.   Plaintiff would defecate in plastic bags and throw the bags out the window.  Sometimes during certain hours, he could ask for permission to use another cell where a bucket would be used to deposit the feces.  That hour was the recreation hour allowed under maximum security.

Plaintiff and his roommate received supplies every 15 days so if there was no plastic bag or permission to go to another cell, he had to wait.  The inmates were given the bags for the trash for the whole section.  His cell mate would have the same, maybe one or two bags a week, so one bag was for him and one bag was for plaintiff.  If the bag was used once, one had to throw it away.  If there was no bag, then permission was requested to use another cell.  He was also threatened with administrative charges for throwing feces out the window.  He

CIVIL 08-2238 (JA)                              4

developed pain in his left side. He would have to urinate in the sink because the toilet did not flush. He developed fungus on his feet ad could not walk around the cell because of the filth. Therefore he spent a good deal of time in his bunk cell.

Plaintiff would complain to every officer that would come to the cell. He presented complaints to the prison administration, and complained to the Puerto Rico Civil Rights Commission. He complained to everyone that he could. He made an administrative complaint to the director of administrative remedies for the correctional population, on October 2, 2007. (Exhibit No. 1.) He complained on October 17, 2007 to the person in charge of maintenance. (Exhibit No. 2.) He also made an administrative complaint on October 22, 2007 in relation to his medical symptoms and the number of times he had requested medical attention. (Exhibit No. 3.) Superintendent Ortiz-Roque issued an announcement at the prison that efforts were being made to correct the problems but that it was the prisoners' fault, noting that shirts, pants, socks, plastic bags and snack bags were found in the process of cleaning the "man holes". (Exhibit No. 4.)

However, when the prisoners arrived there, everything was damaged already. Plaintiff then answered the announcement to that effect. (Exhibit No. 5.) He received a response to the administrative remedy requested from José Ortiz-Roque, three months later but before that, as a result of a routine change, the prisoners were suddenly transferred without notice since the prison was

CIVIL 08-2238 (JA)                                5

reclassified for prisoners in protective custody. (Exhibit No. 6.) When he received the notification related to his complaints, he had already been transferred to another facility. (Exhibit No. 7.) He asked for reconsideration of prior determinations asking that his claims be reconsidered since plaintiff felt that the answer given to him was not responsive. (Exhibit No. 8.) Plaintiff felt that the efforts of the administration were not real and that the cell where he was relocated was also not habitable. There was a response to the request for reconsideration and the administration dismissed the request for reconsideration (Exhibit No. 9.) Plaintiff also sent a letter to the director of the Civil Rights Commission on October 3, 2007 asking the Commission to intervene and protect his rights. (Exhibit No. 10.) Nobody ever responded to his requests during the time he was in cell 205. Plaintiff's cell mate also made claims but those claims were also ignored.

Before he arrived at the cell 205, his health was fine but once there, he began to have upset stomachs, mosquito bites and fungus on the feet. He requested "sick call" on October 2, 2007. (Exhibit No. 11.) He was not attended due to the high volume of patients. He asked for another "sick call" on October 3, 2007. (Exhibit No. 12.) He asked for yet another "sick call" on October 5, 2007 (Exhibit No. 13.) He continuously suffered from nasal congestion due to the humidity in the cell. He asked for yet another "sick call" on October 11, 2007

CIVIL 08-2238 (JA)                                6

complaining of vomiting and stomach ache. He would vomit in the sink, the same place he urinated and brushed his teeth in. (Exhibit No. 14.) He could not be attended due to a shut down. The Corrections Administration gave the individual prisoners no cleaning products for the cell. He used his personal Safeguard soap and a sock to perform cleaning. A sick call request dated October 15, 2007 reflected numerous symptoms. (Exhibit No. 15.) He was seen by a doctor who prescribed Desenex powder, Percogesic and Sudafed.

On October 17, 2007, plaintiff requested a sick call complaining of stomach ache and pain in his left side, and also requested psychological help. (Exhibit No. 16.) Plaintiff still suffers from stomach aches and pain in the left side. On November 7, 2007, seven days after leaving cell 205, plaintiff continued to complain of the stomach ache and pain on his left side, skin rash, and mosquito bites. (Exhibit No. 17.) The only thing eventually cured was the foot fungus but nothing else was adequately treated. Plaintiff sought another "sick call" on November 9, 2007. (Exhibit No. 18.) No evaluation could be done because there was no custodial officer available to move him. He was suffering from the same condition two weeks later. (Exhibit No. 19.)

Plaintiff sent a letter on Christmas Day, 2007 to the director of the Correctional Health Service Corp. complaining of the negligent service he had received and of the condition he was in. (Exhibit No. 20.) A doctor once went to

CIVIL 08-2238 (JA)                             7

the prison section to see how the water from the showers went into his cell.  She and the people that were with her wore face masks when they visited the section.  By then, the prisoners were placing their bags of feces in a garbage can in a common area because of threats that administrative complaints would be filed if they continued to throw feces out the window.

When plaintiff first was imprisoned in Aguadilla, his health was fine.  He was medically evaluated, as he was in Ponce.  In Guayama, with time, he was evaluated but the services there were worse.  In the Mayagüez institution, he was evaluated and he was fine except that he tested positive for Hepatitis C, a condition he had never suffered from before.  That was at the beginning of 2009.  He has never taken drugs intravenously and had no sexual relations in prison.  A doctor told him that he could have received hepatitis C from his prison conditions or from the barber's equipment due to a severe dandruff that he had.

Plaintiff testified that an inmate, Félix Manuel Rija Falero, that lived in cell 206 lent him the toilet in that room twice.  He explained that there are gangs in all of the Puerto Rico prisons and plaintiff is affiliated with one.  His gang is known as "31".  Félix Manuel Rija Falero is a member of the Neta gang.  Gang members were all placed together in the one area and if a cell mate is from another gang, there is cause for fear, like from most people in maximum security.  Plaintiff would use the toilet while the two cell members were in the cell.  Plaintiff testified that

Rija Falero would have the same reason to fear him, as he had to fear Rija Falero. Almost all the other cell mates objected to his using their toilet. Plaintiff was harassed and called names, such as "Mr. Shit a lot". People still address him by that name.

Josue Torres Santiago testified that he lives in Yauco, Puerto Rico. He was a cell mate of plaintiff at Guayama 296, cell 205. He lived in that cell for over three months. When plaintiff arrived, he had been living in that cell for two or three months. Currently he has been in prison since 2010 but before that he was imprisoned from 2006 to 2009. He is scheduled to complete his current sentence in mid-2013. He described the Guayama cell as small, estimating it at 6 feet by 12 feet. He described the cell as toilet clogged, shower water running through it, and unlit. The lower bunk had no window because the cell had been designed for one roommate. The upper bunk blocked the air circulation in the cell. The stench was strong. When another toilet could not be used, he tried to get a bag to deposit excrement and deposit it in a drum or throw the feces out the window because of the foul odor. There were very few times they were allowed to use another toilet. Mr. Torres would urinate in the sink where they brushed their teeth and washed their faces. The cell was in the same condition before plaintiff arrived at the cell. Mr. Torres complained to a custodial officer and he was placed on a waiting list. Mr. Torres filed a lawsuit in Ponce but the case was dismissed. Mr.

CIVIL 08-2238 (JA)                         9

Torres left the cell on the same day with plaintiff.  Everyone in the same section was moved.  The section was basically broken down because of the unsanitary conditions.

Mr. Torres explained that plaintiff's mental and physical condition were not good.  His feet had fungus and his back was full of mosquitos bites.  (He last spoke to plaintiff in May 2009.)  When Mr. Torres' custody was changed, he stopped living with plaintiff.  The administration did nothing until all of the inmates were taken out of the building.

### DEFAULT JUDGMENT

The First Circuit has held that "entry of default prevents the defendant from disputing the truth of well-pleaded facts in the complaint pertaining to liability." Conetta v. Nat'l Hair Care Ctr., Inc., 236 F.3d 67, 75-76 (1st Cir. 2001) (citing Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 693 (1st Cir. 1993)).  Moreover, the entry of default establishes the defendant's liability. Goldman, Antonetti, Ferraiouli, Axtmeyer & Hertell v. Medfit Int'l Inc., 982 F.2d at 693.  "The ordinary rule is that a defaulting [party] is entitled to contest damages and to participate in a hearing on damages, should one be held." Bonilla v. Trebol Motors Corp., 150 F.3d 77, 82 (1st Cir. 1998) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 67-68 (3d ed. 1998)).

CIVIL 08-2238 (JA)                                     10

Plaintiff alleges in his complaint that in the middle of 2007, the then governor and also then director of Corrections decided to move two prisoners in each cell of maximum custody. José A. Ortiz Roque, warden of the Guayama prison, accepted that determination aware of the sub-human conditions in the prison.

Based upon the evidence presented at the default hearing, I enter the following:

## FINDINGS OF FACT

1. At all pertinent times, plaintiff Favio Rodríguez-Sánchez was an inmate at Institution Annex 296, Guayama, Puerto Rico. The period of his incarceration at that institution, specifically in cell 205 of his unit, was from September 25 to October 31, 2007.

2. Miguel Pereira-Castillo was then head of Corrections for the Commonwealth of Puerto Rico. Superintendent José A. Ortiz-Roque was the warden of Annex 296 of the Guayama prison.

3. Plaintiff's cell was designed for a person with disabilities. There was no adequate place to sit. The toilet was clogged, ruined, and useless. It never worked. Cell 205 was next to the showers, and runoff water channeled through the cell. Foul odors came from the fluid running through his cell. The electric

CIVIL 08-2238 (JA)                                    11

lights were put on during the routine counts and normally he could not put the light on, so the cell mates were in darkness day and night for the most part.

4.    Rodents could and would come into plaintiff's cell because there was nothing to obstruct their entering the cell.  The windows were made of steel rods through which mice, roaches and mosquitos entered.  There were no screens.

5.    Plaintiff would defecate in plastic bags and throw the bags out the window.  He asked for permission to use another cell where a bucket would be used to throw his fees-laden bag, during the recreation hour allowed under maximum security.  That occurred twice during his stay.  If there was no bag, then permission was requested to use another cell.

6.    Plaintiff was threatened with administrative charges for throwing feces out the window.

7.    Plaintiff developed pain in his left side.  He would have to urinate in the sink because the toilet did not flush.  He developed fungus on his feet and could not walk around the cell because of the filth.  Therefore he spent a good deal of time in his cell on his bunk.

8.    Plaintiff would complain to every officer that would come to the cell. He presented complaints to the prison administration and complained to the Puerto Rico Civil Rights Commission.  He complained to everyone that he could.

CIVIL 08-2238 (JA)                            12

Superintendent José A. Ortiz-Roque clearly had notice of the conditions in the cell during the time plaintiff lived in cell 205.

9.	Superintendent Ortiz-Roque issued an announcement at the prison that efforts were being made to correct the problems but that it was the prisoners' fault, noting that shirts, pants, socks, plastic bags and snack bags were found in the process of cleaning the "man holes".  (Exhibit No. 4.)

10.	Plaintiff is a gang member of "31". Félix Manuel Rija Falero, who lived in a nearby cell, is a member of the Neta gang.  Gang members were all placed together in the one area and if a cell mate is from another gang, there is cause for fear, like from most people in maximum security.

11.	Plaintiff would use the toilet in Rija Falero's cell while the two cell members were in the cell.  Plaintiff testified that Rija Falero would have the same reason to fear him, as he had to fear Rija Falero.  Almost all the other cell mates objected to his using their toilet.

12.	When the prisoners arrived at the Annex after the transfer together, everything was damaged already.

13.	Plaintiff answered the announcement of Ortiz-Roque. (Exhibit No. 5.) Plaintiff received a response to the administrative remedy requested of José Ortiz-Roque, three months later.

Based upon the findings of fact, I enter the following

CIVIL 08-2238 (JA)                            13

## CONCLUSIONS OF LAW

1.      This case is premised on 42 U.S.C. § 1983 and based upon a violation of the Eighth Amendment.  Section 1983 supplies a private right of action against a person who under color of state law, deprives another of rights, privileges or immunities secured by the Constitution or by federal law.  42 U.S.C. § 1983.  In order to prevail in a section 1983 claim, the plaintiff must allege facts establishing "'(i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States.'" Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996) (quoting Rumford Pharmacy, Inc. v. City of E. Providence, 970 F.2d 996, 998 (1st Cir. 1992)); see González-Pérez v. Toledo-Dávila, 709 F. Supp. 2d 125, 128 (D.P.R. 2010).  "The second element requires the plaintiff to prove not only a deprivation of federal right, but also that the defendant's conduct was a cause in fact of the alleged deprivation." Soto v. Flores, 103 F.3d 1056, 1062 (1st Cir. 1997).  Thus, only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable.  Cf. Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d 87, 91-92 (1st Cir. 1994) (finding that there is no section 1983 liability on the basis of *respondeat superior*, and thus, "[a] supervisor may be found liable only on the basis of his own acts or omissions.")

CIVIL 08-2238 (JA)                                    14

    2.    It is clear that defendant Superintendent José A. Ortiz-Roque was acting under color of law.

    3.    It is clear that plaintiff suffered a violation of his federally protected rights.

    4.    The Eighth Amendment reads in its entirely: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

    5.    The cruel and unusual punishment contained in the Eighth Amendment is applicable to sentenced prisoners. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Calderón-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 63-64 (1st Cir. 2002); Giroux v. Somerset Cnty., 178 F.3d 28, 31 (1st Cir. 1999); Potocki v. Dowaliby, 2007 WL 2406810, at *1 (D.N.H. Aug. 16, 2007).  Yet, the Eighth Amendment applies to state actions through the Fourteenth Amendment.  Thus, there is no difference in the standard of review and its application is "as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983); Burrell v. Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002); see Rodríguez-Borton v. Pereira-Castillo, 593 F. Supp. 2d 399, 412 (D.P.R. 2009.)

    6.    It is clear that the combination of the inhumane conditions to which plaintiff was subjected in cell 205 operated as a violation of his Eighth Amendment

CIVIL 08-2238 (JA)                              15

right to be free from cruel and unusual punishment.  See Surprenant v. Rivas, 424 F.3d 5, 19-20 (1st Cir. 2005); Feliciano v. Fortuño-Burset, 2010 WL 4922700, at *17-18 (D.P.R. Dec. 2, 2010).  These conditions were clearly the result of design and not of accident or happenstance.  The conditions in the unit were known to the prison officials in charge and in control, and especially to the superintendent, before the next group of prisoners arrived at the annex with plaintiff.

7.    "Prison officials violate the Eighth Amendment only when there has been an 'objective, serious deprivation' resulting from 'deliberate indifference to the health and safety of an inmate.'"  Rodríguez-Borton v. Pereira-Castillo, 593 F. Supp. 2d at 413 (quoting Velázquez-Martínez v. Colón, 961 F. Supp. 362, 365 (D.P.R. 1997)).  "[A] prisoner must show (1) that a prison official denied him 'the minimal civilized measure of life's necessities,' Farmer [v. Brennan], 511 U.S. at 834, and (2) that the prison official's state of mind was that of 'deliberate indifference to inmate health and safety,' id. (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991))."  Quiñones-Pagán v. Administración de Correccion, 2009 WL 2058668, at *4 (D.P.R. July 10, 2009).

8.    Plaintiff has plainly complied with this standard and has established a violation of his Eighth Amendment rights.  This is apparent from his testimony and that of his cell mate and from the exhibits received in evidence.

CIVIL 08-2238 (JA)                              16

9.     It is well settled law that there is no respondeat superior liability under section 1983. <u>Ayala-Rodríguez v. Rullán</u>, 511 F.3d 232, 236 (1st Cir. 2007) (citing <u>Rizzo v. Goode</u>, 423 U.S. 362, 375-77 (1976)). Under section 1983, supervisory liability can only be grounded on the supervisor's own acts or omissions either through the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. <u>Whitfield v. Meléndez-Rivera</u>, 431 F.3d 1, 14 (1st Cir. 2005).

10.    "Under section 1983, a supervisory official may be held liable for his subordinates' behavior only if (1) his subordinates' behavior results in a constitutional violation; and (2) the official's action or inaction was affirmatively linked to that behavior such that 'it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.'" <u>Colón-Andino v. Toledo-Dávila</u>, 634 F. Supp. 2d 220, 232 (D.P.R. 2009) (quoting <u>Piñeda v. Toomey</u>, 533 F.3d 50, 54 (1st Cir. 2008)).

11.    "A supervisor's action or inaction amounting to deliberate indifference will be found only if 'it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights.'" <u>Tavárez-Guerrero v. Toledo-Dávila</u>, 597 F. Supp. 2d 250, 254 (D.P.R. 2008) (quoting <u>Germany v. Vance</u>, 868 F.2d 9, 18 (1st Cir. 1989)). "The 'affirmative link' requirement contemplates proof that the supervisor's conduct led inexorably to

CIVIL 08-2238 (JA) 17

the constitutional violation." Tavárez-Guerrero v. Toledo-Dávila, 597 F. Supp. 2d at 254 (quoting Hegarty v. Somerset Cnty., 53 F.3d 1367, 1380 (1st Cir. 1995)).

12. "A key factor in determining supervisor liability is what knowledge the supervisor had regarding the subordinate's behavior." Hernández-Payero v. Puerto Rico, 493 F. Supp. 2d 215, 226 (D.P.R. 2007) (quoting Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d at 93). "Of course, a supervisor without actual knowledge will not escape liability if it is shown that he would have known of the injurious conduct but for his exercise of 'willful blindness' or deliberate indifference." Hernández-Payero v. Puerto Rico, 493 F. Supp. 2d at 226 (quoting Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 582 (1st Cir. 1994)).

13. Plaintiff has argued the elements of supervisory liability but has failed to offer sufficient details regarding defendant Pereira Castillo's actions or inaction related to cell conditions where plaintiff was housed. It is insufficient to proffer that the director of Corrections must have known of the conditions and callously or wilfully disregarded plaintiff's rights, knowing of the subhuman conditions he lived in. That affirmative link is missing.

14. Notwithstanding the entry of default, plaintiff is not entitled to judgment as a matter of law as to the then Director of Corrections Miguel Pereira-Castillo.

CIVIL 08-2238 (JA)                             18

15.   On the other hand, it is clear that José A. Ortiz-Roque, Warden of the Guayama prison, was aware of the condition in his prison, as shown by Exhibit No. 4.  This awareness, coupled with the clear ability to remedy plaintiff's cruel and unusual treatment in a civilized society, albeit in a prison, entitle plaintiff to a judgment in his favor against this defendant.

## DAMAGES

Plaintiff is awarded actual damages in the amount of $1,000 a day for a total of $36,000 for pain and suffering.

Over thirty years ago, prison conditions in the Commonwealth penal system became the main theme in the longest living case in this court, Morales-Feliciano v. Rosselló-González, Civil No. 79-4.  The young, recently appointed judge then presiding has recently taken senior status and continues to preside over the case. Recognition of the violation of Eighth Amendment rights in the entire penal system is nothing new and yet unacceptable.  See, e.g., Morales-Feliciano v. Rosselló González, 13 F. Supp. 2d 151, 209-12 (D.P.R. 1998); also see Morales Feliciano v. Calderón Serra, 300 F. Supp. 2d 321, 340-41 (D.P.R. 2004).  Paraphrasing a known expression, the measure of a civilization is how it treats its weakest members.  It cannot be ignored that plaintiff is a ward of the State.  See Richard G. Singer, Prisoners as Wards of the Courts-a Nonconstitutional Path to Assure Correctional Reform by the Courts, 41 U. Cin. L. Rev. 769 (1972), cited in United

States Ex rel. Wolfish v. Levi, 439 F. Supp. 114, 122 n.7 (D.C.N.Y. 1977).  Kobe cattle are treated better in Japan than prisoners in Guayama.  Plaintiff is also awarded punitive damages in the amount of $10,000.  See, e.g., Surprenant v. Rivas, 424 F.3d at 12.

In view of the above, the Clerk is directed to enter judgment in favor of plaintiff in accordance with this opinion and order.

At San Juan, Puerto Rico, this 10th day of February, 2011.

                              S/ JUSTO ARENAS
                         Chief United States Magistrate Judge